FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 24, 2017

SEAN F. MCAVOY, CLERK

1
2
3
4
5
6
7  UNITED STATES DISTRICT COURT
8  EASTERN DISTRICT OF WASHINGTON
9
10  NIKI LEAVERTON,                           No. 1:15-CV-03183-JTR
11          Plaintiff,
                                            ORDER GRANTING
12          v.                              DEFENDANT'S MOTION FOR
                                            SUMMARY JUDGMENT
13
14  CAROLYN W. COLVIN,
15  Commissioner of Social Security,
16          Defendant.
17

18      **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF
19  No. 14, 19.  Attorney D. James Tree represents Niki Lee Leaverton (Plaintiff);
20  Special Assistant United States Attorney Terrye E. Shea represents the
21  Commissioner of Social Security (Defendant).  The parties have consented to
22  proceed before a magistrate judge.  ECF No. 6.  After reviewing the administrative
23  record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for
24  Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

25                              **JURISDICTION**
26      Plaintiff filed an application for Supplemental Security Income (SSI) on
27  June 30, 2011, alleging disability since June 22, 2009, due to juvenile myoclonic
28  epilepsy, post-traumatic stress disorder, borderline split personality disorder, back

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

problems, attention deficit disorder, and major depression.  Tr. 157-163, 183, 187.
The application was denied initially and upon reconsideration.  Tr. 83-86, 92-103.
Administrative Law Judge (ALJ) Verrell Dethloff held a hearing on November 22,
2013, and heard testimony from Plaintiff.  Tr. 29-53.  ALJ Dethloff retired on
January 3, 2014.  Tr. 12.  On March 6, 2014, ALJ Stephanie Martz[1] issued an
unfavorable decision.  Tr. 12-30.  The Appeals Council denied review on August
18, 2015.  Tr. 1-4.  The ALJ's March 6, 2014, decision became the final decision
of the Commissioner, which is appealable to the district court pursuant to 42
U.S.C. § 405(g).  Plaintiff filed this action for judicial review on October 16, 2015.
ECF No. 1, 4.

### STATEMENT OF FACTS[2]

The facts of the case are set forth in the administrative hearing transcript, the
ALJ's decision, and the briefs of the parties.  They are only briefly summarized
here.

Plaintiff was 22 years old at the date of application.  Tr. 157.  The last grade
completed by Plaintiff was the eleventh in 2007.  Tr. 188.  She reported that she
last worked in 2006 and left due to her impairments.  Tr. 187-188.  Plaintiff's work
history includes the job of courtesy clerk.  Tr. 188.

### STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in
medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035,
1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law *de novo*,

---

[1]Any future reference to an ALJ is a reference to ALJ Stephanie Martz.

[2]Defendant objected to Plaintiff's statement of facts because Plaintiff
allegedly asserted opinions within her fact statement.  ECF No. 19 at 4.  The
Court's statement of facts only includes a brief summary of the facts and does not
state the opinions of the parties.

ORDER GRANTING DEFENDANT'S MOTION . . . - 2

deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194

ORDER GRANTING DEFENDANT'S MOTION . . . - 3

(2004).  If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. § 416.920(a)(4)(v).

### ADMINISTRATIVE DECISION

On March 6, 2014, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 30, 2011, the date of application.  Tr. 14.

At step two, the ALJ determined Plaintiff had the following severe impairments:  depression, back impairment, obesity, and seizure disorder.  Tr. 14.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 16.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined she could perform a range of medium work with the following limitations:

> [t]he claimant can sit for about six hours and stand and/or walk for about six hours, in an eight-hour day with regular breaks.  The claimant can frequently climb ramps and stairs and never climb ladders, ropes, or scaffolds.  She can frequently stoop and crawl.  She has unlimited ability to balance, kneel, and crouch.  She should avoid concentrated exposure to vibration and hazards.  She can understand, remember, and carry out simple, routine tasks and some well learned complex tasks.  She can persist throughout a normal workweek.  The claimant can engage in superficial interactions with the general public and coworkers.

Tr. 18.  The ALJ found Plaintiff had no past relevant work.  Tr. 22.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the Medical-Vocational Guidelines (grids), Plaintiff was "not disabled."  Tr. 22.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

Security Act at any time from the date of application, June 30, 2011, through the date of the ALJ's decision, March 6, 2014.  Tr. 23.

ISSUES

The question presented is whether substantial evidence supports the ALJ's decision finding Plaintiff not disabled and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) failing to properly consider the credibility of Plaintiff's symptom statements; (2) failing to include all Plaintiff's limitations in the residual functional capacity determination; (3) failing to call a vocational expert; and (4) failing to properly weigh the opinion of Russell Anderson, LICSW.

DISCUSSION

**A.    Credibility**

Plaintiff contests the ALJ's adverse credibility determination in this case because (1) the ALJ failed to hold a new hearing pursuant to HALLEX I-2-8-40, and (2) the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's symptoms statements.  ECF No. 14 at 5-11.

**1.    HALLEX I-2-8-40**

First, Plaintiff alleges that the ALJ's decision not to hold a second hearing was in violation of HALLEX I-2-8-40 and a violation of due process.  ECF No. 14 at 5-7.  Plaintiff and Defendant argue that two different versions of HALLEX I-2-8-40 apply.  ECF No. 19 at 6-7 (citing to HALLEX I-2-8-40 (2016)), ECF No. 20 at 1-2 (citing to HALLEX I-2-8-40 (2008)).  While the Court recognizes these two provisions could be read as resulting in two separate outcomes in this case, which HALLEX provision applies is nonessential as the Ninth Circuit has held that, as an internal policy manual, the HALLEX does not impose judicially enforceable duties on either the ALJ or the appellate court.  *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1072 (9th Cir. 2010).

///

1    Furthermore, even if the HALLEX were binding and a source of remedy,

2  Plaintiff would have to establish that a failure to comply with the HALLEX

3  resulted in prejudice.  Plaintiff alleges that the error lies in the ALJ's failure to

4  observe Plaintiff during her hearing.  ECF No. 14 at 7.  However, the ALJ's

5  reasons for rejecting Plaintiff's credibility were not grounded on Plaintiff's

6  demeanor, mannerisms or any factor that could be observed in a live hearing.

7  Instead, the ALJ based her credibility evaluation on the content of Plaintiff's

8  statements, in and out of court, in combination with Plaintiff's medical reports.  Tr.

9  19-20.  As such, the ALJ's determination that there was no need to hold a

10  supplemental hearing was not in error.

11        **2.    Clear and Convincing Reasons**

12        It is generally the province of the ALJ to make credibility determinations,

13  *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific

14  cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent

15  affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's

16  testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d

17  1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

18  "General findings are insufficient:  rather the ALJ must identify what testimony is

19  not credible and what evidence undermines the claimant's complaints."  *Lester*, 81

20  F.3d at 834.

21        The ALJ found Plaintiff less than fully credible concerning the intensity,

22  persistence, and limiting effects of her symptoms.  Tr. 19.  The ALJ reasoned that

23  Plaintiff was less than fully credible because (1) the objective medical evidence

24  was inconsistent with her complaints of back pain and seizure activity, (2) she

25  exhibited drug seeking behavior, (3) her lack of treatment was inconsistent with

26  her reported severity of symptoms, (4) her daily activities are inconsistent with her

27  reported symptoms, (5) there was evidence that questioned her motive for applying

28  for benefits, and (6) she had a poor work history.

ORDER GRANTING DEFENDANT'S MOTION . . . - 6

The ALJ's first reason for finding Plaintiff less than fully credible, that the medical evidence was inconsistent with Plaintiff's complaints of back pain and seizure activity, is a specific, clear and convincing reason to undermine Plaintiff's credibility. Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ determined that Plaintiff's statements regarding back pain limiting her ability to lift/carry, ambulate, and stand were inconsistent with the unremarkable objective findings in the medical records. Tr. 18-19. Additionally, the ALJ determined that Plaintiff's statements of a seizure disorder that resulted in unconsciousness for at least twelve hours after each seizure were inconsistent with records showing Plaintiff was fully alert and oriented following the only documented seizure in her file. Tr. 19, 197, 292-293.

Plaintiff failed to challenge the ALJ's determination that the credibility of her symptom statements was undermined by the objective evidence. *See* ECF No. 14. Therefore, the Court need not discuss this reason in depth. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief).

The ALJ's second reason for finding Plaintiff less than fully credible, that she exhibited drug seeking behavior, is a specific, clear and convincing reason. Drug-seeking behavior is a valid consideration in assessing a claimant's credibility. *See Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007) (affirming the ALJ's denial of benefits where the ALJ determined that the claimant was not credible based on evidence of drug-seeking behavior).

Plaintiff did not challenge the ALJ's determination that Plaintiff's credible was undermined by her drug-seeking behavior. *See* ECF No. 14. Therefore, this Court need not address this issue. *See Carmickle*, 533 F.3d at 1161 n.2.

ORDER GRANTING DEFENDANT'S MOTION . . . - 7

The third reason the ALJ provided for finding Plaintiff less than fully credible, that her lack of mental health treatment was inconsistent with her alleged mental health symptoms, is a specific, clear and convincing reason. Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 C.F.R. § 416.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Plaintiff challenges this reason by citing *Nguyen v. Chater*, 100 F.3d 1462, 4165 (9th Cir. 1996), which criticized the practice of discounting mental health complaints due to a lack of treatment. ECF No. 14 at 8-9. However, the ALJ did more in her analysis than focus on the lack of treatment. She also cited objective evidence that showed Plaintiff's complaints of cognitive functioning were unsupported. ECF No. 20. Therefore, the ALJ considered more than Plaintiff's lack of treatment, making *Nguyen* inapplicable. The ALJ did not error.

The fourth reason the ALJ provided for finding Plaintiff's symptom reports less than fully credible, that her statements were inconsistent with her reported activities of daily living, is not a specific, clear and convincing reason. A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony, or (2) "the claimant is able to spend a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603. The ALJ concluded that Plaintiff's activities of completing personal care, performing household chores, going outside, using public

ORDER GRANTING DEFENDANT'S MOTION . . . - 8

transportation, riding horses, playing computer games, going to church, caring for animals, caring for her mother who was on dialysis, and driving a car are activities inconsistent with her complaints of disabling symptoms and limitations.  Tr. 20.  However the ALJ failed to state how these activities were inconsistent with Plaintiff's alleged symptoms and limitations.  Therefore, this reason falls short of the specific, clear and convincing standard.  However, any error resulting from this reason is harmless as the ALJ provided several other reasons, some of which went unchallenged by Plaintiff, for supporting her determination that Plaintiff's symptom statements were less than fully credible.  *See Carmickle,* 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

The ALJ's fifth reason for finding Plaintiff's symptom statements less than fully credible, that there was evidence that Plaintiff had a secondary motive in applying for benefits, is a specific, clear and convincing reason.  An ALJ may rely on a Plaintiff's secondary motive in seeking disabilities benefits when evaluating testimony regarding the severity of Plaintiff's symptoms.  *Matney O.B.O Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).

Here, Plaintiff's treating physician, Richard Sloop, M.D., stated the following:

> She spent a lot of time telling me about how poor her memory is and that she can't remember what she is supposed to do.  She couldn't possibly go to work because she would be bad with her memory.  I think she is explicitly looking for a monthly payment without having to work.  I have told her that I am not willing to buy into that and I am not going to excuse her from looking for work etc.

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

Tr. 325.  Therefore, there is evidence to support the ALJ's determination that Plaintiff may have had a secondary motive for her application.  As such, this reason meets the specific, clear and convincing standard.

The ALJ's sixth reason for rejecting the credibility of Plaintiff's symptom statements, that she had a poor work history, is specific, clear and convincing.  An ALJ's finding that claimant had limited work history and "ha[d] shown little propensity to work in her lifetime" is a specific, clear, and convincing reasons for discounting the claimant's testimony.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  Again, Plaintiff failed to challenge this reason, ECF No. 14; therefore, the Court will not review the issue.  *See Carmickle*, 533 F.3d at 1161 n.2.

In conclusion, the ALJ did not error in her determination that Plaintiff's symptom statements were less than fully credible.

**B.     Residual Functional Capacity Determination**

Plaintiff argues that the ALJ failed to include all of Plaintiff's limitations in the residual functional capacity determination by leaving out limitations opined by Tae-Im Moon, Ph.D.  ECF No. 14 at 11-14.

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a).  In formulating a residual functional capacity, the ALJ weighs medical and other source opinions and also considers the claimant's credibility and ability to perform daily activities.  *See*, *e.g.*, *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

On July 12, 2012, Dr. Moon completed a Psychological/Psychiatric Evaluation of Plaintiff.  Tr. 564-567.  In his Medical Source Statement, Dr. Moon opined that Plaintiff had a moderate[3] limitation in the abilities to understand, remember, and persist in tasks by following detailed instructions, to perform

---

[3]Moderate is defined as "there are significant limits on the ability to perform one or more basic work functions."  Tr. 566.

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, to learn new tasks, to perform routine tasks without special supervision, to adapt to changes in a routine work setting, to be aware of normal hazards and take appropriate precautions, to communicate and perform effectively in a work setting, to complete a normal workday and work week without interruptions from psychologically based symptoms, to maintain appropriate behavior in a work setting, and to set realistic goals and plan independently.  Tr. 566.  The remaining areas of limitation were identified as "none to mild."  *Id.*

In her decision, the ALJ stated that Dr. Moon "opined that the claimant had a mild to moderate limitation in cognitive and social functioning. . . . I give great weight to Dr. Moon's opinion as it is consistent with the overall evidence.  While the claimant has some limitations, they do not prevent her from working."  Tr. 22.  In the residual functional capacity determination, the ALJ included the following mental limitations: Plaintiff "can understand, remember, and carry out simple, routine tasks and some well learned complex tasks.  She can persist throughout a normal workweek.  The claimant can engage in superficial interactions with the general public."  Tr. 18.

Plaintiff alleges that the ALJ's residual functional capacity determination ignores the moderate limitations opined by Dr. Moon and that under POMS DI 24510.060B2b Dr. Moon's opinion is work preclusive.  ECF No. 14 at 11-14.  However, POMS DI 24510.060 speaks to Social Security's Mental Residual Functional Capacity Assessment form, known as From SSA-4734-F4-SUP, which is a form unique from the one used by Dr. Moon.  Additionally, POMS DI 24510.060 states that the functional capacity assessment is found in narrative form in Section III and not in the twenty mental function items listed under Section I.  As such, POMS DI 24510.060 is not an applicable provision to Dr. Moon's opinion.

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

Furthermore, the moderate limitations assigned by Dr. Moon in the July 2012 form are not in occupational terms. The ALJ was required to extrapolate the opinion into a residual functional capacity determination expressed in occupational terms. Considering the deference afforded the ALJ in interpreting the evidence, the Court will not disturb this determination. *See Tackett*, 180 F.3d at 1097 (if the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ).

## C.    Vocational Expert

Plaintiff argues that the ALJ was required to elicit testimony from a vocational expert prior to denying her claim at step five because the residual functional capacity determination included nonexertional limitations that were not represented on the grids. ECF No. 14 at15-17.

The grids are an administrative tool on which the Secretary must rely when considering claimants with substantially uniform levels of impairment. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). The fact that a non-exertional limitation has been alleged does not automatically preclude the application of the grids. *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 577 (9th Cir. 1988). "The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by [her] exertional limitations." *Id*. Vocational experts are required when non-exertional limitations are sufficiently severe as to significantly erode the occupational base. *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). Here, Plaintiff's occupational base is unskilled medium exertion work, and the ALJ found Plaintiff had the following nonexertional limitations:

The claimant can frequently climb ramps and stairs and never climb ladders, ropes, or scaffolds. She can frequently stoop and crawl. She has unlimited ability to balance, kneel, and crouch. She should avoid concentrated exposure to vibration and hazards. She can understand, remember, and carry out simple, routine tasks and some well learned

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

1
2

complex tasks.  She can persist throughout a normal workweek.  The claimant can engage in superficial interactions with the general public and coworkers.

3
4
5

Tr. 18.  The ALJ determined these "additional limitations [had] little or no effect on the occupational base of unskilled medium work," and that a finding of "not disabled" was appropriate based on grids rule 203.25.  Tr. 22-23.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

Consistent with the ALJ's determination in this regard, the Ninth Circuit has concluded in unpublished decisions that a nonexertional limitation to simple, repetitive tasks does not significantly affect a claimant's ability to engage in unskilled employment.  *See Angulo v. Colvin*, 577 Fed. App. 686, 687 (9th Cir. 2014) (holding that a claimant's restriction to "nonpublic, simple, repetitive work" "did not significantly limit [the claimant's] ability to do unskilled light or sedentary work"; accordingly, the use of the grids, without any vocational expert, was appropriate); *see also Whitfield v. Colvin*, 609 Fed. Appx. 490, 491 (9th Cir. 2015) (stating that "[t]he restriction to 'simple unskilled work . . . performed without public contact' did not significantly limit [claimant's] ability to perform unskilled light work").  Additionally, when a person has a medical restriction to avoid excessive amounts of environmental exposure, here vibration and hazards, the impact on the broad world of work would be minimal as most job environments do not involve a great amount of vibrations or hazards.  *See* S.S.R. 85-15.

21
22
23
24
25

The Court finds the ALJ's determination that Plaintiff's assessed non-exertional limitations did not significantly erode Plaintiff's occupational base, unskilled medium exertion level work, was not in error.  Consequently, testimony from a vocational expert was not necessary in this case.  *See Hoopai*, 499 F.3d at 1076.

26

**D.    Russel Anderson, LICSW**

27
28

Plaintiff challenges the weight given to the opinion of Mr. Anderson.  ECF No. 14 at 17-20.

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

In weighing medical source opinions, the regulations recognize the difference between acceptable medical sources and non-acceptable medical sources.  20 C.F.R. §§ 404.1513, 416.913.  Generally, the ALJ should give more weight to the opinion of an acceptable medial source, such as licensed physicians and psychologists, than to the opinion of an "other source," which includes non-acceptable medical sources such as therapists and nurse-practitioners.  20 C.F.R. §§ 404.1513(d), 416.913(d).  An ALJ is required, however, to consider evidence from "other sources," "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232; 20 C.F.R. § 416.913(d); S.S.R. 06-03p.  An ALJ must give "germane" reasons to discount evidence from "other sources." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

On July 12, 2011, Mr. Anderson completed a Psychological/Psychiatric Evaluation form.  Tr. 282-286.  On the form, Mr. Anderson opined that Plaintiff had a marked[4] limitation in the abilities to understand, remember, and persist in tasks by following complex instructions of three or more steps, to learn new tasks, to communicate and perform effectively in a work setting with public contact, and to maintain appropriate behavior in a work setting.  Tr. 285.  Additionally, Mr. Anderson opined that Plaintiff had a moderate[5] limitation in the abilities to understand, remember, and persist in tasks following simple instructions; to be aware of normal hazards and take appropriate precautions; and to communicate and perform effectively in a work setting with limited public contact.  *Id.*

The ALJ gave this opinion no weight because, it relied heavily on Plaintiff's self-reports, it was inconsistent with Plaintiff's lack of mental health treatment, it was inconsistent with Dr. Moon's evaluation showing Plaintiff's cognitive ///

---

[4]A marked limitation is defined as "[v]ery significant interference."  Tr. 284.

[5]A moderate limitation is defined as a "[s]ignificant in[ter]ference."  Tr. 285.

ORDER GRANTING DEFENDANT'S MOTION . . . - 14

functioning was generally intact, and it was inconsistent with Plaintiff's reported activities.  Tr. 21.

The ALJ's first reason for rejecting Mr. Anderson's opinion, that it relied heavily on Plaintiff's self-reports, is not legally sufficient.  An ALJ may discount the opinions of a treating provider because they were based "to a large extent" on the claimant's reports of symptoms, which the ALJ found not reliable; however, the ALJ must provide a basis for her determination that the treating provider's opinion was based "to a large extent" on the claimant's symptom reports.  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).  Here, the ALJ failed to provide a basis for her finding that Mr. Anderson's opinion was based largely on Plaintiff's symptom reports.  Tr. 21.  Therefore, this reason is legally insufficient to reject Mr. Anderson's opinion.  However, any error resulting from this reason is harmless because, as discussed below, the ALJ provided additional legally sufficient reasons to reject Mr. Anderson's opinion.  *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

The ALJ's remaining reasons for rejecting Mr. Anderson's opinion, that the opinion was inconsistent with Plaintiff's lack of mental health treatment, inconsistent with Dr. Moon's opinion, and inconsistent with her reported activities, are legally sufficient reasons.  All of these reasons are germane to Mr. Anderson's opinion.  Plaintiff does not challenge these reasons based on lack of substantial evidence, but that they are not legally sufficient.  ECF No. 14 at 19-20.  The germane standard is a much lower standard then the clear and convincing or specific and legitimate standards that apply to the opinion of an acceptable medical source and these reasons meet the lower standard as all are related to Mr. Anderson's opinion.  As such, the ALJ did not error in her treatment of Mr. Anderson's opinion.

///

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED January 24, 2017.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE